[No. C. D. 528.  *En Banc.*  December 28, 1950.]

*In the Matter of the Proceedings for the Discipline of*
Ervin F. Dailey, *an Attorney at Law.*[1]

*Nelson R. Anderson*, for board of governors.

*Joseph A. Barto*, for respondent.

Donworth, J.—The Washington state bar association, by a complaint verified by its president, charged Ervin F. Dailey, a member of the bar of this court since June 30, 1922, with violating his duties as an attorney.

[1]Reported in 225 P. (2d) 900.

The complaint set forth three charges, but, since the board of governors of the association unanimously voted that the first count be dismissed, we need not consider it further.

The second count involved respondent's handling of two actions for personal injuries for the daughters of Albert Glencross, and the third involved an oral agreement concerning the basis upon which respondent undertook to prosecute the claim of Mrs. P. W. Parks against the city of Seattle for personal injuries.

Respondent answered the complaint, putting in issue the allegations as to the violations of his duties as an attorney, and affirmatively stated his version of the two disputed matters.

A hearing on these charges was held before a trial committee composed of three practicing attorneys (one of whom was a member of the board of governors). Witnesses testified in support of the allegations of the complaint and were cross-examined by respondent's counsel. Respondent testified fully in his own defense.

The trial committee, after the hearing was concluded, made its report and recommendations to the board of governors in which it made certain findings of fact and recommended that respondent be suspended from the practice of law for a period of six months. Thereupon respondent filed with the board of governors his statement in opposition to the recommendations of the trial committee and an application for hearing *de novo* and for presentation of additional evidence.

A further hearing was subsequently held by the trial committee, at which additional exhibits were admitted in evidence and respondent testified briefly. The trial committee then filed a supplemental report in which it adhered to its previous findings and recommendation. Respondent filed a statement in opposition to the supplemental report.

Thereafter, the board of governors made its report and recommendations to this court, in which it adopted the find-

ings of fact made by the trial committee and concluded as follows:

"The entire record was submitted to the Board of Governors of the Washington State Bar Association. It was read and considered by each member of the Board separately and individually and again considered and discussed by the Board in conference.

"It found that Counts 2 and 3 were sustained by clear and satisfactory evidence.

"It was unanimously voted by the Board:

"1. That Count 1 be dismissed. .

"2. That the Findings of the Trial Committee on Count 2 be approved and that respondent should be reprimanded.

"3. That the Findings of the Trial Committee on Count 3 be approved and Respondent should be suspended for three months.

"4. That this Report and Recommendations of the Board should be made to the Supreme Court of the State of Washington and that the record of this proceeding should be submitted to the Supreme Court consisting of [Here follows a list of the documents accompanying the Report and Recommendations.]"

Respondent filed in this court his exceptions to the board's report and recommendations, and the matter was submitted upon briefs and oral argument on behalf of both the board and respondent.

Since the testimony of the complaining witnesses in each instance was in direct conflict with that of respondent as to the material facts involved, in considering the testimony, we should have in mind the applicable rule as to the weight to be accorded to the findings adopted by the board of governors.

This court, in *In re Thacker,* 35 Wn. (2d) 605, 214 P. (2d) 507, in a unanimous *En Banc* decision, recently stated the rule as follows:

"Some of the findings of the second trial committee were based upon sharply conflicting evidence. It is a very familiar rule that, when a judge of a trial court has made factual findings on conflicting evidence, a reviewing court will not ordinarily disturb them. That rule is logically based on the fact that the trial judge saw and heard the witnesses and heard and observed them give their testimony, and

was, therefore, in a much better position to judge of their veracity and candor than the judges of a reviewing court, who see only a typewritten transcript of the evidence, can possibly be.

"That reasoning, of course, applies directly to the instant case. The trial committees were in a vastly better position to evaluate the testimony of the witnesses on both sides of the controversy than we can possibly be from a mere reading of the records, complete as they are.

"We will, therefore, accept the factual findings made by the second trial committee and adopted by the board of governors. Perhaps, the findings of a trial committee do not have the force of factual findings formally made by judges of a court; yet they are made by persons chosen to make them according to the rules established by the board of governors of the state bar in carrying out the legislative will and purpose declared in the Laws of 1933, chapter 94, p. 399, § 8."

With this rule in mind, we have carefully read the testimony in the record and have examined the exhibits admitted in evidence.

The second count arose from respondent's employment by Albert Glencross on behalf of his two daughters, who were severely injured in an automobile accident which occurred September 7, 1942. The driver of the other car involved was Benjamin Barr. Shortly after the accident, an insurance adjuster, on behalf of Barr, made Glencross an offer of settlement. Respondent denied knowledge of this offer. However, the relation of attorney and client came into existence between these parties sometime prior to the time when the actions were commenced.

On August 17, 1945, two suits were filed by respondent as attorney for the Glencross girls against Barr. Service of process was attempted at the home of Barr's mother-in-law and was quashed by the court on the defendant's motion September 13, 1945.

Respondent testified that he then told Glencross that whenever Glencross was able to locate Barr (who was then in the Navy) respondent would proceed to have him served with process. The finding of the trial committee stated:

"Mr. Dailey admitted that he never made any attempt to locate the defendant Barr after this time or took further action on the claim, claiming that he was awaiting word from Glencross as to the whereabouts of Barr. On the other hand, it was testified by Albert Glencross and substantiated by the testimony of his wife, and the Trial Committee finds the truth to be, that in September of 1946, Mr. Glencross sent a registered letter to Barr to be delivered to addressee only and with a return receipt card. Shortly thereafter, the return receipt card was returned bearing the signature of Benjamin Barr and showing his address to have been 115 - 10th Avenue North. About the same time, the name of Benjamin Barr appeared in the Seattle Telephone Directory listing his true address. Mr. Glencross took the registered return receipt card to Mr. Dailey's office and called his attention to the known address of Benjamin Barr and left the card with Mr. Dailey upon his promise to take action.

"Notwithstanding frequent inquiries of Dailey by both Mr. and Mrs. Glencross during 1946 and 1947 and various excuses and statements from Dailey nothing further was done until December of 1947.

"On December 1, 1947, Mr. and Mrs. Glencross, having previously consulted another attorney, visited the office of Respondent Dailey and obtained from him the files in the two actions brought on behalf of the daughters. As a condition to delivery of these papers, Dailey required that Mr. and Mrs. Glencross sign a receipt and release as follows: (respondents exhibit 2)

" 'Received of Ervin F. Dailey, Attorney at Law, files in the above entitled actions and hereby release him from any further service in these causes and from any and all liability in said cause.'

"On January 15, 1948, there was paid by Albert Glencross to Dailey the sum of $30 and a receipt given. (Respondent's Exhibit 3)

"Through the efforts of Wingate and Suffel, who were then retained by the Glencross family the actions were settled with the insurance company for $1000 which, less attorneys fees, resulted in a net recovery of $860.

"From a written statement furnished by Benjamin Barr, (Association's Exhibit 18) it appeared that he entered the United States Navy on February 21, 1943, and was discharged November 27, 1945. Prior to entering the Navy, he lived at 5709 - 25th Avenue Northwest, Seattle, Washington,

and after his discharge lived at 115 - 10th Avenue North, Seattle, Washington, except for three months when he lived at 11009 6th Southwest, Seattle, Washington."

From our examination of the record, we cannot say that the evidence preponderates against the findings of the trial committee which have been approved by the board of governors regarding the second count and we adopt them as the findings of this court. We further approve the board's conclusion that respondent was guilty of gross neglect and lack of diligence amounting to gross incompetency in the practice of his profession.

The testimony concerning the third count is also conflicting. This dispute arose as to the nature of the oral agreement between respondent and Mr. and Mrs. Parks concerning the basis of his compensation. Mrs. Parks had sustained personal injuries as the result of an accident involving a municipal bus operated by the city of Seattle. Respondent filed a claim against the city on behalf of Mr. and Mrs. Parks for these injuries. Later, he instituted a suit upon the claim and, shortly before the action was to be tried, respondent procured a settlement of forty-five hundred dollars with his clients' approval. The city had first offered to settle for thirty-five hundred dollars, had raised its offer to four thousand dollars and then to forty-five hundred dollars, which was accepted.

The trial committee made the following finding as to the basis of respondent's compensation:

"Approximately sixty days later or on or about February 13, 1947 Mr. and Mrs. Parks visited Mr. Dailey in his office to arrange for suit. On this occasion a complaint was prepared and verified and a discussion occurred concerning fees.

"There was a discrepancy between the testimony of Mr. and Mrs. Parks and that of Respondent Dailey concerning this interview.

"Parks and wife testified that Dailey offered to handle the case upon a contingent fee basis of 33⅓ per cent or for a flat fee of $500 plus $50 to cover court costs. Mr. Dailey testified:

" 'I . . . told him that I would handle the case for

33⅓ per cent. He asked me if he could raise some money if that would make any difference in the amount that I charged. I told him yes, if he could pay $500 down and $50 as costs, that I would reduce the contingent fee to 25%.'

"The version of Mr. Dailey was emphatically denied by both Mr. and Mrs. Parks. No written agreement covering fees was ever entered into.

"Mr. and Mrs. Parks testified that they came to an agreement with Respondent Dailey that he was to proceed with the suit upon a flat fee basis. Parks explained to Dailey that he did not have the $550 at that time but would obtain it.

"In April of 1947, Dailey called Mr. Parks and suggested he come to his office to discuss the case. On April 7, 1947, Mr. Parks borrowed from the Seattle First National Bank, Seaboard Branch, the sum of $550 (Association's Exhibit 10) and on the same day he and Mrs. Parks went to Mr. Dailey's office about noon.

"Here again there is a discrepancy between the testimony of Mr. and Mrs. Parks and that of Dailey.

"Mr. and Mrs. Parks testified that after they were in Dailey's office, Mr. Parks wrote and delivered to Dailey a check for $550 in the lower *right* hand corner of which was written the words 'Attorney fee and court costs', and that the check was written with Mr. Dailey's desk pen.

"Respondent Dailey testified that when Mr. Parks came to his office he had the check in his hand already written and that there was at that time in the lower left hand corner only the word 'Acct'. He thus implied that the other words had been supplied after the check cleared the bank.

"Mr. Parks produced his check register (Association's Exhibit 11) on which appeared an entry under date of *November* 7, 1947, 'Attorney Dailey fee $550.00'."

Respondent strongly relies upon the check itself as supporting his version of the transaction. The check was admitted in evidence before the trial committee but subsequently was lost. However, there are two enlarged photostatic copies of the lower left hand corner of this check bearing the disputed notations.

Respondent testified that Mr. Parks came into his office alone with the check already made out (the witness Niblock corroborated him in this respect) and that it then bore the notation "Acct." in the lower left hand corner. Both Mr.

and Mrs. Parks testified that they were in respondent's office together when Mr. Parks wrote out the check and put the notation "attorney fee & court coast" on it.

The check was submitted to two handwriting experts, one of whom wrote a report in which he stated:

"The words 'court' and 'acct.' appear in the notation on the check one being written over the other. It is not possible to determine which one was written first.

"The writing on the face of the check was written with a pen which shows but one broad track such as that made by a stylograph or ball point pen.

"The endorsement on the back of the check was made by a pen which makes two definite nib tracks."

The other expert testified at the hearing and stated that the check was written with a ball point pen. Mr. Parks carried such a pen. Respondent's desk pen was the ordinary type of fountain pen. This expert further testified that the word "acct" did not appear on the check.

The trial committee stated that the reports of the experts were at variance and then made the following finding:

"Without prolonging this recitation of facts, it is the finding of the Trial Committee as to the disputed issues between Mr. and Mrs. Parks and Respondent Dailey:

"First, that Mr. Dailey agreed to handle the case for Mrs. and Mr. Parks against the City of Seattle for a flat fee of $500 plus $50 court costs and that no contingent arrangement was involved.

"Second, that the check for $550 given by Mr. Parks to Respondent Dailey was in full of such fee and costs, that all handwriting appearing upon the check was there at the time delivered to Mr. Dailey, and that he was and is entitled to no further amount whatsoever from either Mr. or Mrs. Parks.

"Incidentally, the Trial Committee was unable to place any credence in the testimony of the witness Niblock submitted on behalf of Respondent."

It should be stated that, pending the final determination of this proceeding, respondent and Mr. and Mrs. Parks agreed that $625 of the proceeds of the settlement check should be placed in escrow with a Seattle attorney. This sum is still held in escrow.

■ The board of governors having adopted the trial committee's findings made upon conflicting evidence, we cannot find from the record bearing upon the third count that the evidence preponderates against these findings, and we accordingly adopt them as our own.

The trial committee concluded that respondent was guilty of an act involving moral turpitude committed in the course of his relations as an attorney. The board of governors approved this conclusion. Respondent argues that this matter involves merely a dispute between a client and an attorney over fees and no question of moral turpitude is involved. We cannot so regard it. Under the findings, respondent undertook the prosecution of the Parks' claim against the city for a fixed fee, which was paid to him. He was then bound to perform the necessary services, regardless of the outcome of the litigation. Whether the compensation was adequate in the light of subsequent events is immaterial. Respondent's attempt to obtain additional compensation in violation of his agreement with his clients is highly censurable.

In view of the findings with respect to the second and third counts, we approve the report and recommendations of the board of governors filed in this proceeding, and respondent Ervin F. Dailey is hereby ordered to accept the reprimand heretofore submitted to him; and it is further ordered that he be suspended from the practice of law in the state of Washington for a period of three months commencing thirty days after the filing of this opinion.

BEALS, ROBINSON, MALLERY, SCHWELLENBACH, HILL, GRADY, and HAMLEY, JJ., concur.